UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
JOSEPH A. FERRARA, SR., FRANK H. FINKEL,
MARC HERBST, THOMAS N. PIALI, DENISE
RICHARDSON, ANTHONY D'AQUILA,
THOMAS GESUALDI, LOUIS BISIGNANO,
DOMINICK MARROCCO, and ANTHONY
PIROZZI, as Trustees and Fiduciaries of the Local
282 Welfare Trust Fund, the Local 282 Pension
Trust Fund, the Local 282 Annuity Trust Fund, the
Local 282 Job Training Trust Fund, and the Local
282 Vacation and Sick Leave Trust Fund,

                            Plaintiffs,

    - against -

LETICIA, INC. and YORK-JERSEY HAULERS
INC.,
                         Defendants.
------------------------------------------------------------------ x

Civil Action No.:
 09-3032 (RRM) (CLP)

## AMENDED COMPLAINT

Plaintiffs Joseph A. Ferrara, Sr., Frank H. Finkel, Marc Herbst, Thomas N. Piali, Denise Richardson, Anthony D'Aquila, Thomas Gesualdi, Louis Bisignano, Dominick Marrocco, and Anthony Pirozzi, as Trustees and fiduciaries of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund, and the Local 282 Vacation and Sick Leave Trust Fund (collectively, the "Funds"), for their complaint allege as follows:

## INTRODUCTION

This is an action by the Trustees and fiduciaries of employee benefit plans for injunctive and monetary relief under Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§1132(a)(3) and 1145. The

- 2 -

Trustees seek to collect from defendants, jointly and severally, unpaid contributions owed to the Funds, along with interest, liquidated damages, audit fees, attorney's fees and costs incurred in prosecuting this action. As set forth below, the Trustees seek to hold defendants Leticia, Inc. ("Leticia") and York-Jersey Haulers Inc. ("York-Jersey") (collectively, the "Defendants" or the "Companies") jointly and severally liable, based on the alter ego and/or single employer, and/or joint employer and/or double-breasted relationship that the Companies share. In addition, the Trustees seek to compel an audit of the books and records of Leticia Trucking Rental, Inc. and 76 Tonnelle Friendly Service, Inc., two companies affiliated with Leticia, for the period January 1, 2004 through the date of the audit, as required by ERISA, the Trust Agreement governing the Funds and the applicable collective bargaining agreement and to collect any contributions and attendant damages identified as due by said audits.

In addition, the Trustees seek to collect $42,164.11 in contributions determined to be due based on audits of Leticia for the period December 31, 2004 through December 30, 2005 (adjusted audit #07-0097); for the period December 31, 2005 through June 30, 2006 (adjusted audit #08-0339); and for the period July 4, 2006 through October 5, 2007 (adjusted audit #08-0260), plus attendant damages under ERISA.

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, Sections 502(a)(3), 502(e)(1), 502(f) and 515 of ERISA, 29 U.S.C. §§1132(a)(3), 1132(e)(1), 1132(f) and 1145.

2. Venue lies in this district under Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), as the Funds are administered in this district.

## THE PARTIES

3. Plaintiffs are Trustees and fiduciaries of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A). Plaintiffs have discretion and control over the assets and administration of the Funds.

4. The Funds are "employee benefit plans" and "multiemployer plans" within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §1002(3) and §1002(37), with their principal place of business at 2500 Marcus Avenue, Lake Success, New York 11042. The Funds are jointly administered by a Board of Trustees, with equal representation of labor and management representatives in accordance with Section 302(c)(5) of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. §186(c)(5).

5. Pursuant to the terms of various collective bargaining agreements between Local 282 and various employers (the "Employers"), the Employers, including Leticia, are required to contribute to the Funds on behalf of their employees covered by the collective bargaining agreements.

6. The Funds are maintained pursuant to a Restated Agreement and Declaration of Trust (the "Trust Agreement") for the purposes of collecting and receiving contributions from the Employers and providing benefits to eligible participants.

7. The collective bargaining agreements and the Trust Agreement are plan documents within the meaning of Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3). The Funds are third-party beneficiaries of the collective bargaining agreements.

8. Upon information and belief, Leticia is, and at all times relevant to this action has been, a New Jersey corporation, located at 640 Irvington Avenue, Hillside, New Jersey 07205. Leticia is, and at all times relevant to this action has been, engaged in the business of truck rental and heavy construction and excavating in the New York metropolitan area..

Leticia is, and at all times relevant to this action has been, an "Employer" within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Article I, Section 1 of the Trust Agreement.

9. Upon information and belief, York-Jersey is, and at all times relevant to this action has been, a New Jersey corporation, located at 640 Irvington Avenue, Hillside, New Jersey 07205. York-Jersey is, and at all times relevant to this action has been, engaged in the business of truck rental and heavy construction and excavating in the New York metropolitan area. York-Jersey is, and at all times relevant to this action has been, by virtue of its relationship with Leticia, an "Employer" within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Article I, Section 1 of the Trust Agreement.

## FACTUAL BASIS FOR CLAIMS

The Collective Bargaining Agreements, the Trust Agreement, and
the Obligations to Contribute to the Funds and Submit to Audit

10. Since May 25, 1998, Leticia has been a party to a series of collective bargaining agreements (collectively, the "CBAs") with Local 282, I.B.T. ("Local 282" or the "Union"). The most recent CBA between Leticia and Local 282 is the July 1, 2009 through June 30, 2012 Metropolitan Trucker's Association & Independent Trucker's Contract (the "MTA CBA").

11. At all times relevant to this action, the CBAs have required Employers that are parties thereto to make contributions to the Funds on behalf of their covered employees, at specified rates for each hour of covered employment, subject to certain limitations and premium payments which are set forth therein.

12. The CBAs bind Employers to the Trust Agreement. For example, Section 12(G) of the MTA CBA provides that the Trust Agreement is "made a part of this Agreement with the same force and effect as if fully incorporated herein, and the Employer . . . hereby

agree[s] that, upon the execution of this Agreement, [it] shall be deemed [a party] to said Trust Agreement[]."

13. The Trust Agreement requires an Employer to submit remittance reports to the Trustees along with each payment to the Funds. These reports include the Employer's statement of the number of the Employer's employees who are covered by the CBA, the number of hours worked by covered employees, as well as the Employer's contribution obligation to the Funds.

14. The Trust Agreement requires an Employer to submit to periodic audits of its relevant books and records. Specifically, Article IX, Section 1(d) of the Trust Agreement provides that "[t]he Trustees may at any time audit the pertinent books and records of any Employer in connection with" the Employer's contributions to the Funds.

15. Article IX, Section 1(d) of the Trust Agreement specifically defines "pertinent books and records" to include but not be limited to:

    A. Payroll records, including payroll journals, time cards, print-outs, ledgers or any other form of payroll record;

    B. Payroll tax records submitted to federal and state governments, including Forms 941 and W-2;

    C. Complete business income tax returns;

    D. Cash disbursement records;

    E. General ledgers;

    F. Records relating to the hiring of trucks, including equipment vouchers, invoices and payment records;

    G. Any other records specifically requested by the Funds' auditors, including the classifications of Employees, their social security numbers, and the amount of wages paid and hours worked.

16. Article IX, Section 1(d) of the Trust Agreement additionally provides that

pertinent books and records of an Employer include "the books and records of any business which is bound by a collective bargaining agreement with the Union which requires contributions to any of the Funds and any other business entity which is affiliated with such business and which either: 1) has employed persons who have performed the same type of work as the employees of the Employer covered by the Union agreement, or 2) is part of a group of trades or businesses 'under common control,' as that term is used in 29 U.S.C. §1301(b)(1) for withdrawal liability purposes, which includes the Employer."

17. The Trust Agreement requires an Employer to submit to audits in order to verify that all contributions required under the CBAs have been remitted to the Funds, that such contributions have been made solely on behalf of individuals eligible to participate in the Funds and that covered employees are receiving the required benefits and/or credits.

18. Article IX, Section 1(f) provides that the Trustees may "apply for and be entitled to a mandatory injunction directing the Employer to produce its said books and records for audit."

19. Article IX, Section 1(e) of the Trust Agreement further provides that an Employer who fails to submit the required remittance reports and/or pertinent books and records within twenty days of written demand must pay an increased monthly contribution, which is computed by first adding 10% to the number of hours for the month in which the largest number of hours were reported in the previous twelve (12) remittance reports submitted by the Employer (hereinafter referred to as the "base month"). This Section of the Trust Agreement further provides that: (1) in the event that an audit discloses unreported hours for the base month, the amount of said unreported hours plus 10% thereof shall be added to arrive at the total number of covered hours, and (2) if there is no base month because there are no previous remittance reports

or audit reports, then the Employer shall be deemed to have the number of employees that the Union reports in writing that the Employer is employing, with each employee deemed to have worked 40 hours per week for the entire unreported period.  Once a total number of covered hours is arrived at by the above-described methods, it is then multiplied by the current contribution rates to arrive at the Employer's contribution liability.

20. Article IX, Section 1(f) of the Trust Agreement additionally provides that an Employer who submits the required remittance reports, but thereafter fails to comply with an audit request within twenty days of written demand, is liable for an additional monthly contribution, which is computed "by taking 50 percent of the number of hours reported for that month and [] multiplying said number of hours by the current contribution rate."

21. Where an audit discloses a delinquency, an Employer, in addition to paying the contributions identified as being owed, is required under Article IX, Section 3 of the Trust Agreement to pay interest on the monies due, liquidated damages, attorney's fees, audit fees, filing fees, and costs.  Pursuant to the Trust Agreement Article IX, Section 3, interest for contribution obligations that accrue prior to November 1, 2003 is at the rate set forth in Section 5-501 of The New York General Obligations Law.  The Trustees interpret Section 5-501 of the General Obligations Law of the State of New York as providing for an interest rate of sixteen percent and shall apply that rate in calculating the interest on any delinquent contributions found to be owing on an audit or estimated audit of defendants for contributions due prior to November 2003.  Pursuant to Article IX, Section 3, as amended, interest for contribution obligations that accrue on or after November 1, 2003 is calculated at the rate of 1-1/2 percent per month.  Interest is due from the first day of the month when the payment was due to the date when payment is made.

Leticia's Failure to Pay Contributions

22. Upon information and belief, Leticia has underreported and underpaid its contributions to the Funds.

23. Upon information and belief, Leticia has engaged in an ongoing practice of paying contractual wages and benefits for some, but not all, of the hours worked by workers in covered employment. Upon information and belief, Leticia has underreported its contributions to the Funds, in part, by paying workers who performed covered employment through York-Jersey and by failing to report these hours on the remittance reports Leticia submitted to the Funds and by failing to pay contributions for these hours.

The Relationship Between Leticia and York-Jersey

24. Upon information and belief, York-Jersey employed drivers engaged in hauling excavated and other construction materials.

25. For all material times herein, York-Jersey did not have a CBA with Local 282, independent of its relationship with Leticia as alleged in this complaint.

26. Upon information and belief, in or around September, 2005, Leticia Rojas, the principal of Leticia and her mother, Josefa Rojas, the principal of York-Jersey, orchestrated a scheme whereby drivers who worked for Leticia would be assigned to perform covered work, i.e., driving a truck, but would be paid by York-Jersey. There was no distinction between the work performed except the drivers received wages from York-Jersey, rather than from Leticia. However, the hours paid by York-Jersey were never treated as being covered by the CBAs.

27. Upon information and belief, as set forth below, the Defendants share an alter ego, single employer, joint employer and/or double breasted relationship and, therefore, all driving performed by drivers employed by the Defendants was work performed in employment covered by and subject to the terms of the CBAs.

28. Upon information and belief, Leticia and York-Jersey share common management.

29. Upon information and belief, the overall business and financial operations of Leticia and York-Jersey are completely interrelated.

30. Upon information and belief, Leticia and York-Jersey share common facilities.

31. Upon information and belief, Leticia and York-Jersey share common customers and suppliers.

32. Upon information and belief, Leticia and York-Jersey share common equipment.

33. Upon information and belief, Leticia and York-Jersey share a common business purpose.

34. Upon information and belief, Leticia and York-Jersey share centralized control of labor relations.

35. Upon information and belief, Leticia and York-Jersey share common supervisors.

36. Upon information and belief, Leticia and York-Jersey share a common pool of employees.

<u>The Failure to Pay Amounts Due on the December 31, 2004 through December 30, 2005 Audit of Leticia's Relevant Books and Records</u>

37. Following an examination of Leticia's relevant books and records for the period December 31, 2004 through December 30, 2005, the Trustees' auditor issued an audit report, Audit #07-0097, reflecting that Leticia owes $12,164.32 in Welfare Fund contributions, $7,565.65 in Pension Fund contributions, $9,029.22 in Annuity Fund contributions, $128.65 in

Job Training Fund contributions, and $4,099.50 in Vacation Fund contributions, for a total amount of $32,987.34 in contributions plus interest on said contributions at the rate of eighteen percent per year, and other attendant damages under ERISA.

38. After reviewing Leticia's objections to Audit #07-0097, the Funds adjusted Audit #07-0097 and the amounts due are $7,703.92 in Welfare Fund contributions, $4,585.05 in Pension Fund contributions, $5,660.36 in Annuity Fund contributions, $79.85 in Job Training Fund contributions, and $2,657.10 in Vacation Fund contributions, for a total of $20,685.28.

39. Despite a prior demand for payment, Leticia has failed and refused to pay the amount found due and owing on the adjusted December 31, 2004 through December 30, 2005 audit.

<u>The Failure to Pay Amounts Due on the December 31, 2005 through June 30, 2006 Audit of Leticia's Relevant Books and Records</u>

40. Following an examination of Leticia's relevant books and records for the period December 31, 2005 through June 30, 2006, the Trustees' auditor issued an audit report, Audit # 08-0339, reflecting that Leticia owes $2,208.08 in Welfare Fund contributions, $1,521.95 in Pension Fund contributions, $1,849.52 in Annuity Fund contributions, $25.75 in Job Training Fund contributions, and $802.50 in Vacation Fund contributions, for a total amount of $6,407.80 in contributions plus interest on said contributions at the rate of eighteen percent per year, and other attendant damages under ERISA.

41. After reviewing Leticia's objections to Audit #08-0339, the Funds adjusted Audit #08-0339 and the amounts due are $1,840.80 in Welfare Fund contributions, $1,268.80 in Pension Fund contributions, $1,551.55 in Annuity Fund contributions, $21.60 in Job Training Fund contributions, and $678.00 in Vacation Fund contributions, for a total of

$5,341.75.

42. Despite a prior demand for payment, Leticia has failed and refused to pay the amount found due and owing on the adjusted December 31, 2005 through June 30, 2006 audit.

The Failure to Pay Amounts Due on the July 4, 2006 through October 5, 2007 Audit of Leticia's Relevant Books and Records

43. Following an examination of Leticia's relevant books and records for the period July 4, 2006 through October 5, 2007, the Trustees' auditor issued an audit report, Audit # 08-0260, reflecting that Leticia owes $10,570.35 in Welfare Fund contributions, $8,228.50 in Pension Fund contributions, $8,870.44 in Annuity Fund contributions, $100.94 in Job Training Fund contributions, and $3,214.50 in Vacation Fund contributions, for a total amount of $30,984.73 in contributions plus interest on said contributions at the rate of eighteen percent per year, and other attendant damages under ERISA.

44. After reviewing Leticia's objections to Audit #08-0260, the Funds adjusted Audit #08-0260 and the amounts due are $5,623.85 in Welfare Fund contributions, $4,378.50 in Pension Fund contributions, $4,520.49 in Annuity Fund contributions, $46.74 in Job Training Fund contributions, and $1,567.50 in Vacation Fund contributions, for a total of $16,137.08.

45. Despite a prior demand for payment, Leticia has failed and refused to pay the amount found due and owing on the adjusted July 4, 2006 through October 5, 2007 audit.

The Failure to Permit an Audit of Affiliated Entities

46. The Trustees, through their auditor, repeatedly requested that Leticia permit an audit of the relevant books and records of Leticia Trucking Rental Inc., a non-signatory affiliate of Leticia, for the period January 1, 2004 through September 30, 2007.

- 11 -

47. To date, Leticia has produced some, but not all of the books and records of Leticia Trucking Rental Inc.

48. The Trustees, through their auditor, repeatedly requested that Leticia permit an audit of the relevant books and records of 76 Tonnelle Friendly Service Inc., a non-signatory affiliate of Leticia, for the period January 1, 2004 through September 30, 2007.

49. To date, Leticia has failed and refused to submit the books and records of 76 Tonnelle Friendly Service, Inc.

The York-Jersey audit

50. Following an examination of York-Jersey's relevant books and records for the period February 6, 2002 through June 30, 2006, the Trustees' auditor issued an audit report, Audit #07-0008, reflecting that York-Jersey, if determined to be obligated to contribute on behalf of the drivers paid by York-Jersey who worked in covered employment, owes $613,401.29 in Welfare Fund contributions, $406,272.69 in Pension Fund contributions, $606,594.62 in Annuity Fund contributions, $6,388.64 in Job Training Fund contributions, and $235,381.49 in Vacation Fund contributions, for a total amount of $1,910,202.84 in contributions plus interest on said contributions at the rate of eighteen percent per year, and other attendant damages under ERISA.

51. Following an examination of York-Jersey's relevant books and records for the period July 1, 2006 through July 30, 2009, the Trustees' auditor issued an audit report, Audit #11-0213, reflecting that York-Jersey, if determined to be obligated to contribute on behalf of the drivers paid by York-Jersey who worked in covered employment, owes $61,900.40 in Welfare Fund contributions, $47,824.00 in Pension Fund contributions, $56,154.28 in Annuity Fund contributions, $683.20 in Job Training Fund contributions, and $20,496.00 in Vacation Fund contributions, for a total amount of $187,057.88 in contributions plus interest on said

contributions at the rate of eighteen percent per year, and other attendant damages under ERISA.

52. On June 1, 2010, both of the York-Jersey audits were provided to Leticia's counsel.

## COUNT I

## AGAINST LETICIA FOR LIABILITY UNDER THE CBA

53. Plaintiffs repeat and reallege the allegations of paragraphs 1 to 52 as if fully set forth herein.

54. Section 515 of ERISA, 29 U.S.C. §1145, requires "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement . . . [to] make such contributions in accordance with the terms and conditions of such plan or such agreement."

55. Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3), provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter or the terms of the plan."

56. Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), mandates that, "[i]n any action brought by a fiduciary on behalf of a Plan to enforce Section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan,

    1.    the unpaid contributions;

    2.    interest on the unpaid contributions;

    3.    an amount equal to the greater of

        (a)    the interest on the unpaid contributions; or

    (b)  liquidated damages . . . in an amount not to exceed 20% of the [unpaid contributions];

 4.  reasonable attorney's fees and costs of the action; and

 5.  such other legal or equitable relief as the court deems appropriate.

 57.  Section 502(g)(1) of ERISA, 29 U.S.C. §1132 (g)(1), further provides that "[i]n any action under this subchapter [other than one described in 502(g)(2)] by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fees and costs of action . . . ."

 58.  Upon information and belief, Leticia has underpaid contributions due and owing the Funds on a systematic and continuous basis since at least January 2005, as reflected by the unpaid audits. In addition, upon information and belief, additional amounts are due and owing based on Leticia's use of York-Jersey to disguise hours worked in covered employment.

 59.  Leticia's failure to remit contributions to the Funds for hours worked by individuals performing covered work constitutes a failure to make contributions in accordance with the terms of the plan documents of the Funds in violation of Sections 502 and 515 of ERISA, 29 U.S.C. §§1132 and 1145, giving rise to an action under Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3).

**COUNT II**

**AGAINST YORK-JERSEY BASED ON ITS
ALTER EGO, SINGLE EMPLOYER, JOINT
EMPLOYER AND/OR DOUBLE BREASTED RELATIONSHIP WITH LETICIA**

 60.  The Trustees repeat and reallege the allegations contained in paragraphs 1 through 59 as if fully set forth herein.

 61.  York-Jersey is jointly and severally liable with Leticia for any underpayments to the Funds and attendant remedial relief under Sections 502 and 515 of ERISA,

29 U.S.C. §§ 1132 and 1145, based on its alter ego, single employer, joint employer and/or double breasted relationship with Leticia.

## COUNT III

### AGAINST LETICIA BASED ON LETICIA'S FAILURE TO SUBMIT THE BOOKS AND RECORDS OF ITS AFFILIATES TO A COMPLETE AUDIT

62. Plaintiffs repeat and reallege the allegations of paragraphs 1 to 67 as if fully set forth herein.

63. Leticia, by virtue of its failure to submit the books and records of Leticia Truck Rental, Inc. and 76 Friendly Tonnelle Service, Inc. to a complete audit, is subject to an injunction ordering it to submit immediately to a complete audit of Leticia Truck Rental, Inc. and 76 Friendly Tonnelle Service, Inc. for the period from January 1, 2004 to date, and Defendants, by virtue of the allegations set forth above, are required to pay the contributions due according to the audit, interest on the delinquent contributions, liquidated damages, audit fees, attorney's fees, and costs.

64. The Defendants, by virtue of the allegations set forth above and by virtue of their failure to submit the pertinent books and records within twenty (20) days of written demand, are further jointly and severally liable for an increased monthly contribution for each month during the period for which the books and records were not produced.

65. In accordance with Article IX, Section 1(e) of the Trust Agreement, for each month in which the Defendants failed to submit its required remittance reports and/or failed to submit the pertinent books and records to the Funds' auditors within twenty days of written demand, the contributions due under the Trust Agreement provision are computed as stated therein.

66. In accordance with Article IX, Section 1(f) of the Trust Agreement, for

each month in which Leticia did submit its required remittance reports but failed to submit the pertinent books and records for audit within twenty days of written demand, Leticia's increased monthly contribution rate due under this Trust Agreement provision is computed as stated therein.

67. Defendants are also required to pay interest on monies due, liquidated damages, audit fees, attorney's fees, and costs in accordance with the Trust Agreement and Section 502(g) of ERISA, 29 U.S.C. § 1132(g).

68. The Defendants, by failing to submit to a complete audit, and/or pay amounts due as a result of an audit or estimated audit, and as required by the CBAs and the Trust Agreement, have violated Section 515 of ERISA, 29 U.S.C. §1145, by failing to make contributions in accordance with the terms of the plan documents of the Funds, thereby giving rise to an action under Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3), and remedies under Section 502(g) of ERISA, 29 U.S.C. §1132(g).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter a judgment and injunction:

1. Declaring that Leticia and York-Jersey share an alter ego, single employer, joint employer and/or double breasted relationship with each other and that, as such, Leticia and York-Jersey are jointly and severally liable for contributions and the attendant damages owed to the Funds for each hour of covered work performed by drivers engaged by either of the Defendants to perform work covered by the CBAs for the period from February 6, 2002 to date;

2. Ordering Leticia and York-Jersey, jointly and severally, to pay to the Funds $42,164.11 in contributions determined to be due based on the adjusted audits of Leticia for the period between December 31, 2004 and December 30, 2005; the period between December 31, 2005 and June 30, 2006; and the period between July 4, 2006 and October 5,

2007, plus any additional unpaid contributions owed for all hours worked in covered employment as determined to be due based on additional audits of Leticia and audits #11-0213 and #07-0008 of York-Jersey as well as based on any other information discovered during this litigation, plus interest from the first date of the month in which contributions were due through the date of the judgment, plus an amount equal to the greater of either interest on the unpaid contributions or liquidated damages of 20 percent of the unpaid contributions plus attorneys' fees and costs pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), and Article IX, Section 3 of the Trust Agreement; and

      3. Ordering Leticia to produce, for audit, the books and records of its non-signatory affiliates: Leticia Trucking Rental, Inc. and 76 Tonnelle Friendly Service Ltd. for the period June 1, 2004 to date;

      4. Ordering Defendants, jointly and severally, to pay (i) any unpaid contributions identified by the audits of their books and records, including the books and records of Leticia's non-signatory affiliates, (ii) interest on the unpaid contributions at the rate set forth in the Trust Agreement or amendment thereto, (iii) an amount equal to the greater of interest charged on the unpaid contributions or liquidated damages of 20 percent of the unpaid contributions, (iv) the cost of the audits, and (v) attorneys' fees and costs, pursuant to Sections 502(g)(1) and (g)(2) of ERISA, 29 U.S.C. §1132(g)(1) and §1132(g)(2), and Article IX, Section 3 of the Trust Agreement;

      5. Ordering Defendants, jointly and severally, to further pay (i) estimated contributions in an amount computed under Article IX, Sections 1(e) and/or 1(f) of the Trust Agreement for the first day of the period sought to be audited and continuing thereafter, (ii) interest on the estimated contributions at the rate set forth in the Trust Agreement, (iii) an

amount equal to the greater of interest charged on the estimated contributions or liquidated damages of 20 percent of the estimated contributions, (iv) the costs incurred in estimating the contributions due, and (v) attorneys' fees and costs, pursuant to Sections 502(g)(1) and (g)(2) of ERISA, 29 U.S.C. §1132(g)(1) and §1132(g)(2), and Article IX, Section 3 of the Trust Agreement; and

      6.    Ordering such other legal and equitable relief as the Court deems appropriate.

Dated: June 30, 2010
      New York, New York

      Respectfully submitted,

      /s/ James R. Grisi
      James R. Grisi (JG 9423)
      COHEN, WEISS and SIMON LLP
      330 West 42nd Street
      New York, New York 10036
      (212) 563-4100

      Attorneys for Plaintiffs