UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOSEPH A. FERRARA, SR., FRANK H. FINKEL,
MARC HERBST, THOMAS N. PIALI, DENISE
RICHARDSON, ANTHONY D'AQUILA,
THOMAS GESUALDI, LOUIS BISIGNANO,
DOMINICK MARROCCO, and ANTHONY
PIROZZI, as Trustees and Fiduciaries of the Local
282 Pension Trust Fund, the Local 282 Annuity
Trust Fund, the Local 282 Job Training Trust Fund,
and the Local 282 Vacation and Sick Leave Trust
Fund,

**MEMORANDUM & ORDER**
09-CV-3032 (RRM) (CLP)

           Plaintiffs,

    - against -

LETICIA, INC. and YORK – JERSEY HAULERS,
INC.,

           Defendant.
------------------------------------------------------------X

**ROSLYNN R. MAUSKOPF, United States District Judge.**

On July 15, 2009, plaintiff trustees and fiduciaries of employee benefit plans of Local 282 of the International Brotherhood of Teamsters (collectively, "plaintiffs" or "counterclaim defendants") filed this action to collect contributions allegedly owed by Leticia, Inc. ("defendant" or "counterclaim plaintiff") and its alleged alter ego, York-Jersey Haulers, Inc., pursuant to a collective bargaining agreement and Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA), 29 U.S.C. §§ 1132(a)(3) and 1145. (Compl. (Doc. 1); Amended Compl. (Doc. 17).) On July 22, 2011, defendant filed a Second Amended Answer ("SAA"), alleging seven counterclaims, six of which sound in state tort law. (SAA (Doc. No. 67) ¶¶ 165–270.) On October 17, 2011, plaintiffs filed a motion to dismiss defendant's six state-law counterclaims. (Pls.' Mot. to Dismiss (Doc. No. 73).)

For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

## BACKGROUND

Defendant is a New Jersey corporation that provides trucking services for excavated materials from heavy construction sites. (SAA ¶ 8.) Plaintiffs are trustees and fiduciaries of various Local 282 Trust Funds ("the Funds"), which are multi-employer benefit plans. (Amended Compl. ¶¶ 3–4.) Local 282 and defendant are parties to a collective bargaining agreement ("CBA") allegedly requiring defendant to contribute to the Funds on behalf of covered employees. (*Id.* at ¶ 5.)

Plaintiffs allege that, beginning in 2005, defendant has underreported the hours worked by its employees in two ways: first, by paying workers through a separate entity that did not have a CBA with plaintiffs, and second, by failing to report all the hours worked. (*Id.* at ¶¶ 23, 26.) Defendant disputes these allegations and asserts counterclaims alleging that plaintiffs have engaged in a discriminatory effort to impede its business. (SAA at 16.) As part of this effort, defendant claims that plaintiffs "administered the Local 282 Funds arbitrarily, capriciously and in bad faith" (*Id.* at ¶ 102) "because [defendant] is owned and operated by an Hispanic woman" (*Id.* at ¶ 103). Defendant identifies the following conduct as the alleged arbitrary, capricious and bad faith administration of the Funds, purportedly constituting state-law torts:

> (1) discriminatory enforcement of purported "key-to-key" pay requirements only against [defendant]; (2) refusal to provide . . . a letter of good standing . . . notwithstanding, upon information and belief, their willingness to do so for other employers who were blatantly and notoriously non-compliant . . .; (3) conducting audits . . . with greater frequency than . . . non-Hispanic employers; (4) purposely inflating the amount of contribution deficiencies . . . with full knowledge that the purported contractual basis for the asserted deficiencies was not supported . . . by the MTA CBA . . .; (5) arbitrarily and capriciously and in bad faith relying upon grossly inaccurate and deliberately manipulated On Site Steward Reports . . .; (6) arbitrarily and capriciously and in bad faith insisting upon and conducting audits of other legal entities owned by [defendant despite that plaintiffs knew] those other entities employed no truck drivers and were [not] liable under the MTA CBA . . .; and (7) by arbitrarily and capriciously and in bad faith seeking to impose liability upon [defendant] for the purported work of employees employed by . . . a separate and distinct entity . . . .

(*Id.* at ¶105.)

Defendant provides additional context for allegations related to the "key-to-key requirement." Allegedly, in mid-2007, union agents changed their interpretation of the CBA to measure covered work time to include not only the time "when the drivers were transporting excavated material," but also the "time when the drivers were traveling between the yard where the trucks were parked and their first and last assignments of the day," referred to as "down time" in the counterclaims. (*Id.* at ¶ 134.) This expanded measurement of the covered work time is known as the "key-to-key" rule. (*Id.* at ¶ 136.) Defendant alleges that this interpretation is "in direct conflict with the written terms of the MTA CBA," and is not being applied to other employers. (*Id.* at ¶¶ 135–38.) Defendant also claims that the alleged conduct—application of the key-to-key requirement, excessive audits, "bogus audit claims," false claims that individuals working for other businesses are instead working for defendant, and denial of a letter of good standing—was engaged in with malice and for the reason that the owner and operator is Hispanic. (*Id.* at ¶¶ 147–49, 156, 160.) Defendant further alleges that this conduct resulted in harm to the defendant in the form of higher wages and benefit contributions, excessive audit costs, resulting competitive disadvantage, and injury to business relationships that plaintiffs were aware of. (*E.g.*, *id.* at ¶¶ 203–06.)

Before this Court is plaintiffs' motion to dismiss the state-law counterclaims, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, on grounds that they are preempted by Section 301 of the Labor Management Relations Act and Section 514 of the Employee Retirement Income Security Act. (Pls.' Mem. (Doc. No. 74) at 1–2.)

**LEGAL STANDARD**

I.  **Legal Standard on a Motion to Dismiss**

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the Court to examine the legal, rather than factual, sufficiency of a pleading. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The standard for a motion to dismiss is the same with respect to claims and counterclaims. *See, e.g.*, *Onanuga v. Pfizer, Inc.*, No. 03 CIV. 5405(CM)(GAY), 2004 WL 601689, at *3 (S.D.N.Y. Mar. 16, 2004); *O'Hearn v. Bodyonics, Ltd.*, 22 F. Supp. 2d 7, 10 (E.D.N.Y. 1998). As required by Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To withstand a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A court considering a 12(b)(6) motion must "take[ ] factual allegations [in the pleading] to be true and draw[ ] all reasonable inferences" in the counterclaim plaintiff's favor. *Harris*, 572 F.3d at 71 (citation omitted). A pleading need not contain "detailed factual allegations," but it must contain "more than an unadorned, the-[counterclaim-]defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, the pleading must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the [counterclaim-]plaintiff pleads factual content that allows the court to draw the reasonable inference that the [counterclaim-]defendant is liable

4

for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The determination of whether a pleading "states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir. 2007)).

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court must limit itself to the facts stated in the pleading, documents attached to the pleading as exhibits, and documents incorporated by reference in the pleading. *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999).

## II. Preemption under Section 301 of the Labor Management Relations Act

Section 301 of the LMRA states: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties . . . ." 29 U.S.C. §185(a). The Supreme Court has interpreted Section 301 as "a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Vera v. Saks & Co.*, 335 F.3d 109, 114 (2d Cir. 2003) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985)). Therefore, "when a state claim alleges a violation of a labor contract . . . such claim is preempted by section 301 and must instead be resolved by reference to federal law." *Id.* (citing *Allis-Chalmers*, 471 U.S. at 210). Furthermore, the preemptive effect of Section 301 applies to actions alleging contract violations, as well as those alleging state tort claims. *Id*. (citing *Allis-Chalmers*, 471 U.S. at 211).

The Supreme Court has provided a test for whether a state-law claim is preempted by Section 301: "When resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be

5

treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Id.* (quoting *Allis-Chalmers*, 471 U.S. at 220). Preemption is warranted where resolution depends on an interpretation of a CBA. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 410 (1988). However, "[n]ot every suit concerning employment or tangentially involving a CBA . . . is preempted by section 301." *Vera*, 335 F.3d at 114 (citing *Allis-Chalmers*, 471 U.S. at 211). "The boundary between claims requiring 'interpretation' of a CBA and ones that merely require such an agreement to be 'consulted' is elusive." *Wynn v. AC Rochester*, 273 F.3d 153, 158 (2d Cir. 2001). Preemption is designed to assure that determinations regarding "what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement" do not serve to undermine the effort to develop and apply a uniform body of federal law. *See Vera*, 335 F.3d at 115 (citing *Livadas*, 512 U.S. at 122–23).

### III. Preemption under Section 514 of the Employee Retirement Income Security Act

Section 514 of the Employee Retirement Income Security Act provides that "the provisions of this subchapter . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. 1144(a). "Although a plain reading of this statute lends itself to an extremely broad interpretation, the Supreme Court has greatly narrowed the scope of this section." *Hattem v. Schwarzenegger*, 449 F.3d 423, 428 (2d Cir. 2006) (referencing *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Insur. Co.* ("*Travelers*"), 514 U.S. 645, 655–56 (1995)).

Because the "relates to" language of this preemption clause is so broad as to provide "no meaningful limitation," courts instead look to "the structure and objectives of the statute as a means of determining the scope of preemption." *Stevenson v. Bank of New York Co.*, 609 F.3d 56, 59 (2d Cir. 2010) (citing *Travelers*, 514 U.S. at 655–56). A law "relates to" an employee benefit plan if it has a "connection with" or "reference to" such a plan. *Hattem*, 449 F.3d at 428.

6

However, ERISA preemption analysis begins with the presumption that Congress did not intend to supplant state laws. *Id.*; *Travelers*, 514 U.S. at 654–55. The Second Circuit has noted a reluctance to find preemption where a state law does not affect relationships between core ERISA entities—including employers and trustees—and the state law does not tend to control or superseded central ERISA functions—such as the determination of eligibility or amount of benefits, or means of securing unpaid benefits. *Stevenson*, 609 F.3d at 59; *Gerosa v. Savasta & Co.*, 329 F.3d 317, 324 (2d Cir. 2003). Moreover, courts have declined to preempt state laws under ERISA where the connection is "too tenuous, remote, or peripheral to warrant a finding that the law 'relates to' an [employee benefit] plan." *Romney v. Lin*, 94 F.3d 74, 79 (2d Cir. 1996) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 (1983)). "[T]he presumption against preemption is considerable-state laws of general application that merely impose some burdens on the administration of ERISA plans but are not 'so acute' as to force an ERISA plan to adopt certain coverage or to restrict its choice of insurers should not be disturbed." *Plumbing Indus. Bd. v. E.W. Howell Co.*, 126 F.3d 61, 67 (2d Cir. 1997).

## DISCUSSION

Defendant alleges that plaintiffs have conducted business governed by the CBA in a racially discriminatory manner, in violation of federal law, and with malice, in violation of state tort law. Defendant asserts two claims of each of three state-law torts: prima facie tort, tortious interference with contract, and tortious interference with prospective economic advantage. (SAA ¶¶ 165–270.) Plaintiffs argue that these six state-law claims are preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §184(a), and Section 514 of the Employee Retirement Income Security Act ("ERISA").

Because any claim requiring interpretation of a CBA is preempted, the starting point for assessing preemption is consideration of the elements of the asserted state-law claims. *Foy v.*

7

*Pratt & Whitney Group*, 127 F.3d 229, 233 (2d Cir. 1997); *Zuckerman v. Volume Sers. Am., Inc.*, 304 F. Supp. 2d 365, 370 (E.D.N.Y. 2004).

### I. Prima Facie Tort

Under New York law, the elements of prima facie tort are "(1) intentional infliction of harm, (2) resulting in special damages, (3) without excuse or justification, and (4) by an act or series of acts that would otherwise be lawful." *Burns Jackson Miller Summit & Spitzer v. Lindner* ("*Burns*"), 59 N.Y.2d 314, 332 (1983). The touchstone of this tort requires that disinterested malevolence is "the sole motive for defendant's otherwise lawful act." *Id*. at 333. When the pleading indicates other motives, the cause of action for prima facie tort must be dismissed. *G-I Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d 233, 251 (S.D.N.Y. 2001); *see also Twin Labs., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 571 (2d Cir. 1990) ("[M]otives other than disinterested malevolence, such as profit, self-interest, or business advantage will defeat a prima facie tort claim.") (quoting *Burns*, 59 N.Y.2d 314, 332 (1983)).

Here, defendant pled that plaintiffs' conduct was "arbitrarily and maliciously" engaged in "without any excuse or justification." (SAA ¶¶ 204–05.) While the pleadings suggest that the plaintiffs had a number of motives, including those prohibited in a prima facie claim under *Burns*, this presents merely a factual dispute, the resolution of which is inappropriate on the present motion to dismiss, and moreover, does not implicate preemption, as the motives of the plaintiffs do not require interpretation of the CBA. *See L/M Ninety CM Corp. v. 2431 Broadway Realty Co.*, 566 N.Y.S.2d 277, 278 (N.Y. App. Div. 1991) (finding the motivation behind the relevant conduct to be a factual issue not proper for dismissal). Moreover, while plaintiffs are certainly going to present the CBA and their intention to enforce their rights under it as the justification for their conduct, "the possibility that reference may be made to a collective bargaining agreement in connection with a justification defense . . . does not give rise to pre-

8

emption of state-law tort claims . . . ." *Gay v. Carlson*, 60 F.3d 83, 88 (2d Cir. 1995) (citing *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246 (1994)).

However, defendant's allegations fall short in other respects, namely the failure to identify and plead an actionable harm, and failure to identify conduct resulting in that harm that is otherwise lawful. Indeed, defendant alleges, without saying so directly, that plaintiffs' relevant conduct constitutes breach of contract—alleging the existence of a contract, conduct that is inconsistent with the contract, and resulting harm. *See* SAA at 105 ("[A] contractual basis for asserted deficiencies was not supported and could not be supported by the MTA CBA," and defendants are "no[t] liable under the MTA CBA" for contributions demanded by plaintiffs). Defendants allege that the interpretation of the contract leading to all this "harm" was "untruthful" about "the requirements of the CBA" and "in direct conflict with the written terms of the MTA CBA and well established industry practice." (*Id.* at 135.) The contributions alleged to be demanded by plaintiffs as a result of allegedly "bogus" audits are said to be "wholly unconnected to the actual requirements of the CBAs" and "not at all warranted by the industry practice or a fair reading of the CBAs." (*Id.* at 150–51.) Since defendant has alleged that the conduct is an unlawful breach of contract, it cannot also argue that it is "otherwise lawful" conduct that can be the subject of a prima facie tort claim.

Defendant's failed effort to plead the prima facie tort, and the catch-22 it finds itself in with respect to pleading the lawfulness or unlawfulness of plaintiffs' conduct, illustrate the relationship between tort and contract that ultimately explains the failure of defendant's claim and simultaneous preemption under § 301.

> The specific acts alleged in the instant complaint, however, are not otherwise lawful and non-actionable; they are alleged to have been done in breach of a contract and, therefore, unlawfully. Just as acts remediable within the traditional or "classical" tort categories are not cognizable under a prima facie tort theory,

9

> the acts alleged herein, so clearly cognizable under the theory of breach of contract, afford no occasion to invoke the theory of prima facie tort.

*Effective Communs. West, Inc. v. Bd. of Co-op. Educ'l*, 57 A.D.2d 485 (N.Y. App. Div. 1977); *see also Meridian Capital Partners, Inc. v. Fifth Ave. 58/59 Acquisition Co. LP*, 874 N.Y.S.2d 440, 441 (N.Y. App. Div. 2009) (same). It is thus no surprise that the conduct alleged by defendant, essentially that plaintiffs' conduct, even if not in breach of contract, was arbitrary and in bad-faith, is not cognizable. "Plaintiff's claim amounts to nothing more than a claim based on the alleged breach of the implied covenant of good faith and fair dealing, and the use of familiar tort language in the pleading does not change the cause of action to a tort claim in the absence of an underlying tort duty sufficient to support a claim . . . ." *New York Univ. v. Continental Insur. Co.*, 662 N.E.2d 763, 770 (1995).

This is unlike cases where the party has identified an independent duty protected by state law that was breached separate and apart from a CBA that is remotely or tangentially related to the conduct at issue. *See, e.g.*, *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988) (finding wrongful discharge claim not preempted under § 301); *Baldracchi v. Pratt & Whitney Aircraft Div.*, 814 F.2d 102, 107 (2d Cir. 1987) (same); *Wynn v. AC Rochester* (2d Cir. 2001) (finding false representation claim not preempted under § 301); *Foy*, 127 F.3d at 237 (same); *Shipkevich v. Staten Island Univ. Hosp.*, No. 08-cv-1008 (FB)(JMA), 2009 WL 1706590 (E.D.N.Y. June 16, 2009) (finding race discrimination claim not preempted under § 301); *Bryant v. Verizon Communs. Inc.*, 550 F. Supp. 2d 513, 530 (S.D.N.Y. 2008) (same for race and gender); *Zuckerman*, 304 F. Supp. 2d at 372 (same for disability). Here, defendant has identified no duty independent of that embodied by or included in the CBA,[1] and therefore, any harm

---

[1] Defendant has cited no case acknowledging a prima facie tort, or any other tort, premised on disparate enforcement of common contract terms, nor any independent duty to avoid disparate enforcement, apart from prohibited discrimination based on race, etc. "Where a person does a lawful act or enforces a legal remedy available to him, it

10

alleged and defenses to it would necessarily be dependent upon the CBA for their construction. This case is therefore akin to precedent finding that torts based on duties embodied by the CBA itself are preempted under § 301. *See, e.g.*, *Allis-Chalmers*, 471 U.S. at 220–21 (finding bad-faith handling of insurance claim to be preempted); *Int'l Brotherhood of Electrical Workers v. Hechler*, 481 U.S. 851, 861–62 (1987) (finding negligent performance claim to be preempted); *Greco v. Communs. Workers of Amer.*, 824 F. Supp. 351, 356 (E.D.N.Y. 2011) (same).

The Court does not hold that a claim of prima facie tort alleging conduct tangentially related to a CBA may never avoid preemption and survive a motion to dismiss. However, as alleged, defendant's claim is precisely the type of claim that § 301 preemption attempts to weed out. A party cannot simply cast its defenses to a contract dispute as malicious intent to harm and thereby avoid arbitration and entitle itself to a state-law-based interpretation of contractual terms, as to do so would defeat the purposes of preemption—the development of a uniform body of federal law to be applied to labor contract disputes, and preventing the circumvention of arbitration requirements for such claims. *Livadas*, 512 U.S. at 122–23.

As the Court finds that defendant has failed to adequately plead a prima facie tort and that such a claim would be preempted under § 301, the Court will not address preemption under § 514. Plaintiffs' motion to dismiss defendant's Second and Fifth Counterclaims for prima facie tort as preempted by Section 301 is therefore GRANTED.

## II. Tortious Interference with Contract

Under New York law, defendant's tortious interference with contract claim requires, (1) the existence of a valid contract between the defendant and a third party, (2) plaintiffs' knowledge of that contract, (3) plaintiffs' intentional procurement of the third-party's breach of

---

is of no moment that there was a malicious motive behind his act if in fact such motive existed." *Biber Bros. News Co. v. New York Evening Post, Inc.*, 144 Misc. 405, 408 (N.Y. Sup. Ct. 1932).

the contract without justification, (4) actual breach of the contract, and (5) damages resulting therefrom. *Lama Holding Co. v. Smith Barney Inc.,* 88 N.Y.2d 413, 424 (1996). Here, defendant has pled the existence of a valid contract with Phoenix Constructors JV, plaintiffs' knowledge of the contract, a breach of the alleged contract, and damages resulting therefrom. (SAA ¶¶ 208–11.) Defendant has also alleged that it was plaintiffs' arbitrary and malicious imposition of a new interpretation of the key-to-key standard that caused the breach. (*Id.* at 210.)

This is unlike a tortious interference claim where the alleged breach is of the CBA itself, thereby requiring interpretation of the CBA and warranting preemption under § 301. *See, e.g., Meier v. Premier Wine & Spirits, Inc.*, 371 F. Supp. 2d 239, 246 (E.D.N.Y. 2005) (finding claim based on tortious interference with CBA to be preempted); *Gray v. Grove Manuf. Co.*, 971 F. Supp. 78, 84–85 (same). Here, defendant alleges that plaintiffs' conduct resulted in the breach of a contract with a third party. To the extent that defendant argues that the tortious nature of the conduct alleged is its unlawfulness under the CBA, it is preempted. However, to the extent the tortiousness of plaintiffs' conduct is alleged to be its solely malicious purpose and unique harm with respect to defendants' other contracts, interpretation of the CBA will not necessarily be required for litigation of the elements. Preemption under § 301 is therefore not warranted. *See, e.g., Quarles v. Remington Arms, Co.*, 848 F. Supp. 328, 332 (D. Conn. 1994) (finding claim based on tortious interference with non-CBA employment contract not preempted).[2]

---

[2] As discussed above, while plaintiffs are likely going to present the CBA and their rights under it as the justification for their conduct, "the possibility that reference may be made to a collective bargaining agreement in connection with a justification defense . . . does not give rise to pre-emption of state-law tort claims . . . ." *Gay v. Carlson*, 60 F.3d 83, 88 (2d Cir. 1995) (citing *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246 (1994)). Much like in the wrongful termination context, plaintiffs need only show a justified motive for their conduct, not necessarily compliance with the CBA, to defeat the claim. *See Baldracchi*, 814 F.2d at 105.

Neither is this a claim necessarily triggering § 514 preemption. The elements of the tort claim do not contain a "reference to" an employee benefits plan. Nor does the claim have a "connection with" such a plan. *Hattem*, 449 F.3d at 429–32. The state-law tort elements do not require a review of the determination of benefits, nor do they govern the administration of benefits or funding of a plan, nor is the tort claim a mechanism providing an alternative remedy to employees to collect benefits. *See Gerosa*, 329 F.3d at 324 (ERISA functions include "determination of eligibility for benefits, amounts of benefits, or means of securing unpaid benefits."); *Arditi v. Lighthouse Int'l*, 10 CIV 8416 DLC, 2011 WL 166919 (S.D.N.Y. Jan. 18, 2011), *aff'd,* 676 F.3d 294 (2d Cir. 2012) (*quoting Stevenson*, 609 F.3d at 62) ("Laws that have been ruled preempted are those that provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee.") This is not the typical preemption context, wherein an employee attempts to utilize a state law to obtain benefits allegedly governed by a benefits plan. *See, e.g.*, *Plumbing Indus. Bd.*, 126 F.3d at 68 (finding state claim preempted because it provides an alternative mechanism for an employee to enforce rights protected by ERISA); *Romney*, 94 F.3d at 79–80 (same).

If defendant's tort action is ultimately successful, it would merely render plaintiffs liable for engaging in conduct without any justification and with the intention to procure a breach of defendant's contract—an outcome with no bearing on the propriety of plaintiffs' conduct relative to the benefit plans. Therefore, defendant's tortious interference with contract claim does not affect or control the relevant ERISA relationship between the parties and thus does not "relate to" an employee benefit plan within the meaning of § 514. *See Del Turco v. Speedwell Design*, 623 F. Supp. 2d 319, 350–52 (E.D.N.Y. 2009) (finding that a tortious interference counter-claim

13

brought by defendant employer against union—alleging that a trustee of the fund made direct comments to a third-party contractor—was not preempted). This is a closer case than *Del Turco*, since here, the allegedly tortious conduct was ostensibly undertaken in the service of administering the funds. Surely, any attempt by defendant to litigate this claim based on proof of breach of the CBA or benefit plan is preempted. *See, e.g.*, *Moore v. R.T.L. Constr., Inc.*, Civ. No. 09-CV-3178, 2010 WL 2521733, at *3 (D. Minn. June 16, 2000) (finding remittur, offset, and breach of fiduciary duty based on coercive audits resulting from breach of plan to be preempted). However, there is a narrow ground on which the alleged demands by plaintiffs, allegedly conducted for solely malicious purposes, could be resolved without constraining the administration of the benefit plans. *See Hattem*, 449 F.3d at 431 ("[T]hose [claims] that have not been preempted are laws of general application-often traditional exercises of state power or regulatory authority-whose effect on ERISA plans is incidental.") (quotation omitted).

However, even though preemption does not apply, defendant has failed to adequately plead the element of intent to procure the breach by Phoenix Constructors, and, for this reason, the claim must fail. While the counter-claims include allegations that plaintiffs' conduct was malicious, defendant failed to allege that plaintiffs' conduct was undertaken with the intent to procure the alleged breach. *See in re Refco Inc. Securities Litig.*, 826 F. Supp. 2d 478, 521–22 (S.D.N.Y. 2011) (finding it insufficient for pleading intent to procure breach that "defendant engaged in wrongful conduct that had the effect of impairing a plaintiff's contract"); *Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 813–16 (S.D.N.Y. 2008) (dismissing claims for tortious interference because pleading failed to allege intent to procure beach).

Therefore, plaintiffs' motion to dismiss defendant's Third and Sixth counterclaims is GRANTED.

### III. Tortious Interference with Prospective Economic Advantage

Under New York law, defendant's claim for tortious interference with prospective business advantage requires that (1) defendant had business relations with a third party; (2) plaintiffs interfered with those business relations; (3) plaintiffs acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) plaintiffs' acts injured the relationship. *Lombard v. Booz-Allen & Hamilton, Inc.,* 280 F.3d 209, 214 (2d Cir. 2002); *Thome v. Alexander & Louisa Calder Found.,* 70 A.D.3d 88, 108 (2009). Where, as here, the contractual rights are only prospective, greater deference is accorded to freedom of competition. *NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.,* 87 N.Y.2d 614, 622 (1996). Plaintiffs' conduct "must amount to a crime or an independent tort" or be "for the sole purpose of inflicting intentional harm on plaintiffs." *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004).

Defendant has alleged business relations with a number of entities, and has alleged that plaintiffs' solely wrongful and malicious conduct resulted in injury to those relations. For the same reasons that preemption under § 301 and § 514 did not apply to defendant's claim for tortious interference with contractual relations, neither is preemption warranted here. Litigation of the elements of this claim does not necessarily require interpretation of the CBA, nor does it impose any limitations on the administration of benefit plans apart from utterly malicious conduct, and thus the goals of § 301 and § 514 will not necessarily be implicated. Again, to the extent that defendant attempts to litigate any remaining claim by proof of breach of the CBA, or seeks a finding under state-law of the propriety of plaintiffs' conduct under the CBA or benefits plans, such claim is preempted. *See, e.g., Malcolm v. NPD, Inc.,* Civ. No. 05-CV-960, 2007 WL 1847200, at *3 (D. Minn. June 21, 2007) (finding breach of contract counterclaims premised on impropriety of audit request to be preempted under ERISA). However, a nuanced and narrow reading of defendant's pleading allows a claim for tortious interference with prospective

15

economic advantage that does not turn on the meaning of the CBA, and, at most, involves its superficial consultation.

Once again, however, with the exception of the refusal to issue a letter of good standing, defendant has failed to adequately plead the type of interference that supports a claim for tortious interference with prospective economic advantage. "[The] interference must be direct." *In re Refco*, 826 F. Supp. at 520. "[T]he defendant must direct some activities towards the third party and convince the third party not to enter into a business relationship with the plaintiff." *Henneberry v. Sumitomo Corp. of Amer.*, No. 04 Civ. 2128 (PKL), 2005 WL 991772, at 22 (S.D.N.Y. 2005) (quoting *Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 957 F. Supp. 477, 482 (S.D.N.Y.1997)). As defendant has alleged no conduct directly interfering in the alleged business relationships, aside from the refusal to issue a letter of good standing to Urban Foundation, this claim must fail except with respect to the letter of good standing. *Id.*; *see Black Radio Network, Inc. v. NYNEX Corp.*, No. 96 Civ. 4138, 2000 WL 64874, at *4 (S.D.N.Y. Jan. 25, 2000).

Therefore, plaintiffs' motion to dismiss the Fourth and Seventh Counterclaims is GRANTED in part, but DENIED with respect to tortious interference with defendant's prospective relations with Urban Foundation.

## CONCLUSION

For the reasons above, plaintiffs' motion to dismiss is GRANTED with respect to the Second, Third, Fifth, and Sixth Counterclaims. With respect to the Fourth and Seventh Counterclaims, plaintiff's motion is GRANTED in part, but DENIED with regard to the refusal to give a letter of good standing with respect to Urban Foundation.

SO ORDERED.

Dated: Brooklyn, New York  
       September 21, 2012

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF  
United States District Judge